UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JENNESE MASSENGALE**, | 2:18-CV-11366-TGB |
| Plaintiff, | |
| vs. | **ORDER GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE AMENDED AFFIRMATIVE DEFENSES AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**, | |
| Defendant. | |

When Jennesse Massengale went to a chiropractor after getting in an auto accident, she assigned her insurance rights to recover the costs of treatment to the chiropractor. Later the chiropractor sued the insurance company to recover the costs of treatment, but the insurance company won the case, the jury finding no injury. Massengale also brought suit against the insurance company to recover many other costs, and the insurance company is now seeking summary judgment in its favor based on the fact that it won the previous case.

Before the Court then is Defendant State Farm Mutual Automobile Insurance Company ("State Farm")'s motion for summary judgment, ECF No. 10, and motion for leave to file first amended notice of affirmative defenses pursuant to Fed. R. Civ. P. 15(a)(2), ECF No. 11.

Plaintiff Jennese Massengale has responded to both. *See* ECF No. 17; ECF No. 15. State Farm argues that summary judgment is warranted because it prevailed by obtaining a jury verdict and judgment of "no cause of action" in a prior action brought by Plaintiff's assignee, nonparty Spine Rehab, PLLC. State Farm argues that the prior court's decision bars Plaintiff's claims in the instant case under the doctrines of res judicata and collateral estoppel. Somewhat alternatively, Defendant moves for leave to file amended affirmative defenses in the event that summary judgment is not granted. For the reasons stated herein, the Court will **GRANT** Defendant's motion for leave to file first amended notice of affirmative defenses but **DENY** Defendant's motion for summary judgment.

## I. Facts

On March 3, 2017, Plaintiff's "entire right side, right knee, right shoulder, back, neck and head" suffered injuries when she was riding as a passenger in a 2017 Ford Fusion owned and driven by Anita Touchstone and the car was rear-ended by a 2005 Chevy, driven by Ana Trejo-Sandoval. Plaintiff's Answers to Defendant's First Interrogatories, ECF No. 17-5, PageID.479. Defendant asserts the Ford Fusion was merely "bumped," and sustained "very minor damage to the rear." ECF No. 10, PageID.75. Plaintiff contests this, saying that even though the damage did not look extensive, Touchstone had to replace the entire rear end of the car. ECF No. 17, PageID.405–06; ECF No. 17-6 (photos of car

damage). Touchstone's Ford Fusion had insurance through Defendant State Farm. ECF No. 10, PageID.75.

Following the accident, Plaintiff received treatment from many healthcare providers, including Spine Rehab, PLLC, a facility that provides chiropractic services. *See* ECF No. 17-5, PageID.480–81 (answer to interrogatory no. 6, listing every health provider). When she obtained treatment from Spine Rehab, Plaintiff signed papers assigning to Spine Rehab her statutory rights to collect no-fault personal injury protection ("no-fault PIP") benefits for the services she received for that treatment. ECF No. 10, PageID.76; Spine Rehab Assignment, ECF No. 10-7.

On February 6, 2018, Plaintiff filed a lawsuit against State Farm and Trejo-Sandoval in state court. ECF No. 1-2. Her lawsuit included claims for negligence against Trejo-Sandoval[1] and claims seeking no-fault PIP benefits and underinsured motorist ("UIM") benefits from State Farm through Touchstone's policy with State Farm. It also included a claim under the Medicare Secondary Payer Act (42 U.S.C. § 1395y), a federal question. ECF No. 10, PageID.76. State Farm removed the case to this Court. ECF No. 10, PageID.76.

On March 13, 2018, Spine Rehab—as an assignee of Plaintiff—filed a separate lawsuit against State Farm in state court, seeking to collect payment of no-fault PIP benefits for the chiropractic services they rendered to Plaintiff from September to December 2017. ECF No. 10, PageID.76–77. Spine Rehab's case against State Farm proceeded to trial

---

[1] Plaintiff settled with Defendant Trejo-Sandoval and the Court entered a stipulated Order for Dismissal on October 19, 2018. ECF No. 9. Therefore, only Massengale's claims against State Farm remain.

in the 40th Judicial District Court in December 2018 ("Spine Rehab trial"). Transcript, ECF No. 24-3. Plaintiff was not called as a witness in the Spine Rehab trial and claims she was not involved in the case at all. ECF No. 23, PageID.621. Counsel for State Farm represented to the state court that it attempted to subpoena Plaintiff for the purposes of appearing in the Spine Rehab trial, but her counsel at the time refused to honor the subpoena. Transcript, ECF No. 24-3, PageID.639.

The Spine Rebab trial concluded in a judgment of "no cause of action" in favor of State Farm. ECF No. 10-10, PageID.151-52. The jury verdict form for the trial, attached as an exhibit to Defendant's motion for summary judgment, shows that in response to the question: "Did the [sic] Jennese Massengale sustain an accidental bodily injury?" the jury answered "no." Jury Verdict Form, ECF No. 10-9, PageID.148. Because the jury found that Massengale did not sustain an accidental bodily injury, the jury did not consider whether her injury arose out of the ownership, operating, maintenance, or use of a motor vehicle, or whether allowable expenses were incurred by Spine Rehab arising out of that injury. *Id.* The court's judgment of "no cause of action" was entered on January 7, 2019, approximately one week before Defendant filed its motion for summary judgment and motion for leave to file amended affirmative defenses asserting that the Spine Rehab jury verdict and judgment served as res judicata and collateral estoppel bars to Plaintiff's claims against State Farm before this Court. ECF No. 10-9, PageID.149; ECF No. 10-10, PageID.151-52.

The Court held a hearing on Defendant's motions. *See* May 16, 2019 Minute Entry. At the hearing, the Court directed Defendants to file the

transcript of the Spine Rehab trial with the Court. *Id.* Defendants complied. *See* ECF No. 24-3 (Spine Rehab trial transcript); ECF Nos. 24-4, 5, 6 (depositions of independent medical experts that were read into the record at the Spine Rehab trial).

## II. Standards of Review

### a. Amended pleadings

When justice so requires, a court "should freely give leave" to amend. Fed. R. Civ. P. 15(a)(2). The decision as to whether justice requires the amendment is within the district court's sound discretion. *Forman v. Davis*, 371 U.S. 178, 182 (1962). However, a court may deny leave to amend for "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Seals v. General Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008).

### b. Motion for Summary Judgment

Plaintiff argues that Defendant's motion is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) because Defendant cites to *Wysocki v. International Business Machine Corporation*, 607 F.3d 1102 (6th Cir. 2010) in its motion for the general proposition that a motion to dismiss may be converted to a motion for summary judgment where the court considers matters outside of the pleadings. *See* Defendant's motion for summary judgment, ECF No. 10, PageID79;

Plaintiff's response to defendant's motion for summary judgment, ECF No. 17, PageID.409. Defendant cites *Wysocki* before providing the standard of review for Rule 56. *Id.* Plaintiff argues *Wysocki* supports her position that Defendant's motion should be treated as a motion to dismiss. ECF No. 17, PageID.411. Defendant did not respond to Plaintiff's assertions in its reply in support of its motion for summary judgment. *See* ECF No. 18.

In *Wysocki*, the defendant simultaneously answered the plaintiff's complaint and filed a Rule 12(b)(6) motion to dismiss and a counterclaim. 607 F.3d at 1104. When it later filed its reply in support of its 12(b)(6) motion, the defendant attached an affidavit in support of its motion. *Id.* The district court treated the defendant's motion to dismiss as a motion for summary judgment and granted the defendant's motion. *Id.* The Sixth Circuit affirmed, determining that the plaintiff had notice that the motion to dismiss "might" be converted to a motion for summary judgment and had "a reasonable opportunity to present materials outside the pleadings." *Id.* at 1105. The court reasoned that the plaintiff had notice because the initial motion to dismiss included language informing the plaintiff that a motion to dismiss could be treated as a motion for summary judgment where the court considers matters outside of the pleadings and because the original motion introduced material outside of the pleadings. *Id.*

Here, Defendant explicitly moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on January 15, 2019, thirteen days before the close of discovery on January 28, 2019, see Scheduling Order, ECF No. 7, and approximately eleven months after Plaintiff filed her complaint in state court, see ECF No. 1-2. Defendant also included several other exhibits, presumably produced over the course of discovery, which demonstrated that the motion would not be treated as a 12(b)(6) motion relying only on the pleadings. What Plaintiff appears to take issue with is her lack of notice that the Spine Rehab trial had concluded in December of 2018, not long before Defendants moved for summary judgment in January of 2019. But Plaintiff was able to litigate the relevance of the Spine Rehab jury verdict form in response to Defendant's motion, see ECF No. 17, PageID.412-17, and at the hearing on Defendant's motion, the Court ordered the production of the transcript of the Spine Rehab trial proceeding, see May 16, 2019 Minute Entry. More importantly, State Farm answered Massengale's complaint on or about May 21, 2018, well before it filed the instant motion. A motion asserting the defense of failure to state a claim under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Therefore, Defendant's motion cannot be construed as a motion to dismiss. The Court accordingly considers Defendant's motion as a motion for summary judgment.

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue

of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

### III. Discussion
### a. Motion for Leave to File First Amended Notice of Affirmative Defenses Pursuant to Fed. R. Civ. P. 15(a)(2)

On January 15, 2019, eight days after judgment was entered in the Spine Rehab trial, Defendant filed a motion for leave to file amended affirmative defenses, seeking to assert the defense that Plaintiff's claims were barred, "in whole or in part, by the doctrines of res judicata, collateral estoppel, and/or issue preclusion." Proposed Amended Affirmative Defenses, ECF No. 11-12, PageID.303. The basis for Defendant's motion was the resolution of the Spine Rehab trial wherein, Defendant alleges, "it was determined that Jennese Massengale did not sustain an injury in the March 3, 2017 motor vehicle accident." *Id.* Defendant argues that as a result Massengale should be barred from litigating her claims; all of which, Defendant alleges, require a finding that she was injured in the car accident. *Id.* In support, Defendant argues the amendment is in the interests of justice because it was unable to plead the defense at the time it filed its answer in May 2018. ECF No. 11, PageID.229. The Spine Rehab trial did not conclude in a jury verdict

until December 18, 2018 and the "no cause of action" judgment was not entered until January 7, 2019. Jury Verdict, ECF No. 11-9 PageID.285; Judgment, ECF No. 11-10, PageID.287.

That Defendant timely moved to amend just one week after the judgment was entered in the Spine Rehab trial mitigates against any suggestion of bad faith on Defendant's part. Nor is there evidence that Defendant repeatedly failed to cure the deficiency by prior amendment, as amendment was not possible before January 7, 2019. Plaintiff argues the motion should not be granted because doing so would be futile. ECF No. 15, PageID.316. In so doing, Plaintiff addresses the merits of Defendant's res judicata and collateral estoppel defenses in roughly the same manner as her response in opposition to Defendant's motion for summary judgment.[2] *Id.* Plaintiff does not argue that she would be prejudiced by the amendment. *Id.* However, the Court recognizes that allowing Defendant to amend its affirmative defenses at this point in the litigation could potentially prejudice Plaintiff. Indeed, after the hearing on Defendant's motions, the Court instructed Defendant to produce the transcript of the Spine Rehab trial, demonstrating that the amendment necessitated some additional discovery. That being said, the trial transcript was produced and shared with Plaintiff. Additionally, because Defendant's motion was filed at the same as its motion for summary judgment—which centered around Defendant's proposed defenses of res

---

[2] The merits of this issue will be discussed below.

judicata and collateral estoppel—Plaintiff was given ample opportunity to contest the merits of Defendant's defenses in her response in opposition. *See* ECF No. 17, PageID.412-17 (arguing that the doctrines of res judicata and collateral estoppel do not apply to Plaintiff's case). Given these circumstances, the Court finds that Defendant timely moved to amend its affirmative defendants after judgment was entered in the Spine Rehab case, and Plaintiff has not demonstrated that she will be unduly prejudiced by the amendment. Accordingly, the Court will **GRANT** Defendant's motion for leave to file amended notice of affirmative defenses pursuant to Fed. R. Civ. P. 15(a)(2).

### b. Motion for Summary Judgment

The primary question before the Court is whether the "no cause of action" jury verdict and judgment in the prior case between Plaintiff's assignee, nonparty Spine Rehab, and State Farm should bar Plaintiff's claims in the instant case under the doctrines of res judicata and collateral estoppel. In deciding whether a state court judgment will be given preclusive effect in a federal court, the federal court looks to that state's res judicata and collateral estoppel laws. *Exec. Arts Studio v. City of Grand Rapids*, 391 F.3d 783, 795 (6th Cir. 2004); *Spence v. TRW Inc.*, 92 F.3d 380, 382 (6th Cir. 1996). Because res judicata and collateral estoppel are separate doctrines, they will be discussed separately below.

## 1. Res judicata (claim preclusion)

In Michigan, the doctrine of res judicata, or claim preclusion, "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. Michigan*, 680 N.W.2d 386, 396 (Mich. 2004) (citing *Sewell v. Clean Cut Mgt., Inc.*, 621 N.W.2d 222, 225 (Mich. 2001)). The Supreme Court of Michigan interprets the doctrine of res judicata "broad[ly]," barring claims already litigated and "every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 680 N.W.2d at 396. The court also broadly defines the concept of privity:

> To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert. The outer limit of the doctrine traditionally requires both [1] a 'substantial identity of interests' and [2] a 'working functional relationship' in which [3] the interests of the nonparty are presented and protected by the party in the litigation.

*Bates v. Twp. of Van Buren*, 459 F.3d 731, 734-35 (6th Cir. 2006) (quoting *Adair*, 680 N.W.2d at 396). "To be in privity is to be so identified in interest with another party that the first litigant represents *the same legal right* that the later litigant is trying to assert." *Adair*, 680 N.W. at 396 (emphasis added).

As for *Adair*'s first res judicata prong, the parties do not appear to dispute that the prior action between Spine Rehab and State Farm, ending in a jury verdict, was decided on the merits. ECF No. 10, PageID.85; ECF No. 17, PageID.412-17. And regarding the second prong, the parties agree that Massengale was not herself a party to the *Spine Rehab v. State Farm* case. Instead, this case presents the question of whether Spine Rehab, as an assignee of Plaintiff, was in "privity" with Plaintiff such that both actions could be said to have involved "the same parties or their privies." *Adair*, 680 N.W.2d at 396. "A person who is not a party to a suit generally has not had a full and fair opportunity to litigate the claims and issues settled in that suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotations omitted). As the Sixth Circuit has opined, "the Supreme Court is a stickler about the due-process rights of nonparties to litigation." *Amos v. PPG Indus, Inc.*, 669 F.3d 448, 453 (6th Cir. 2012). This rule against nonparty preclusion is, however, subject to six recognized exceptions. *Id.* at 893-94; *Amos*, 699 F.3d at 451-52 (interpreting *Sturgell*). Of those exceptions, the second provides that nonparty preclusion may be justified where there is a "pre-existing 'substantive legal relationship[ ]'" between the party in the first case and the party in the second case such that it can be said that the party had a "full and fair opportunity" to litigate the claims in the first matter. *Sturgell*, 553 U.S. at 894. Included in the "qualifying relationships"

explicitly enumerated by the Court is the relationship between "assignee and assignor." *Id.*

State Farm argues that because Spine Rehab was Massengale's assignee in the Spine Rehab trial, they were in sufficient privity under *Adair* and fell within the "pre-existing substantive legal relationship" exception to the rule against nonparty preclusion.[3] ECF No. 10, PageID.83-84; ECF No. 18, PageID.508-10. In *Covenant Medical Center, Inc. v. State Farm Mutual Auto Insurance Company*, the Michigan Supreme Court held that healthcare providers, like Spine Rehab, do not possess independent standing to bring claims against insurers, like State Farm, to recover no-fault PIP benefits. 895 N.W.2d 490, 493 (Mich. 2017). Rather, after *Covenant*, healthcare providers may proceed as an *assignee* of the insured to recover benefits from the insurer. *Id.* at 505 n.40; *see also Jawad A. Shah MD, PC v. State Farm Mut. Auto. Ins. Co.*, 920 N.W.2d 148 (Mich. App. 2018) (applying *Covenant* and holding that a person entitled to PIP benefits may assign those benefits to a health care provider for payment of health care services under a policy of no-fault insurance). *Covenant* thus demonstrates that Spine Rehab's ability to seek no-fault PIP benefits on behalf of Massengale against State Farm was governed by the assignment relationship between them. And State

---

[3] Interestingly, during the Spine Rehab trial State Farm argued that Massengale did not actually assign her rights to Spine Rehab and Spine Rehab failed to prove that assignment by failing to have Massengale appear at trial. ECF No. 24-3, PageID.938-39 (State Farm moves for a partial directed verdict).

Farm contends that as an assignee, Spine Rehab stood in the shoes of Massengale as assignor and acquired all of her rights when Spine Rehab brought its claim for no-fault PIP benefits. ECF No. 10, PageID.87; *Prof. Rehab Assoc. v. State Farm Mut. Auto. Ins. Co.*, 577 N.W.2d 909, 914 (Mich. App. 1998) ("[A]n assignee stands in the shoes of the assignor and acquires the same rights as the assignor possessed."). Further, State Farm contends that Spine Rehab's assignee/assignor relationship with Massengale established a clear substantial identity of interests, and a working functional relationship in which Massengale's interests were presented and protected by Spine Rehab. State Farm thus alleges that Massengale and Spine Rehab were in "privity" so as to satisfy *Adair*'s second prong. ECF No. 10, PageID.85-88.

In response, Massengale argues that although the assignor/assignee relationship certainly existed between herself and Spine Rehab, by itself it is not sufficient to establish "privity" as described in *Adair*. For example, Massengale points out that she only assigned a small portion of her no-fault PIP benefits to Spine Rehab in the form of one unpaid bill to one healthcare provider. ECF No. 17, PageID.413. Therefore, she argues, she was not "so identified in interest" with Spine Rehab that Spine Rehab's position in the state court trial represented and protected the "same legal right" that she is now trying to assert. *Adair*, 680 N.W. at 396. She also argues this means the *Sturgell*

assignor/assignee exception to the rule against nonparty preclusion does not apply in these circumstances. ECF No. 17, PageID.412-13.

Determining whether Spine Rehab, as Massengale's assignee, actually had a "full and fair opportunity" to litigate her claims in the first case will require a more thorough inquiry into the assignment that existed between Spine Rehab and Massengale. The Assignment of Rights signed by Plaintiff states that the "Assignor acknowledges that he/she has received treatment, products, services, and/or accommodations (collectively the 'Services') from Assignee and that Assignor has incurred charges for such Services." ECF No. 10-5, PageID.119. It further states that "[f]or valid consideration . . . Assignor has incurred charges with respect to Services from Assignee on or before" the date of execution of the Assignment. *Id.* Finally it states that it "is an assignment of the right to enforce payment of charges incurred for Services, for which are payable under any policy of insurance, contract, legal claim and/or statute." *Id.* The Assignment is then followed by a list of several dates and signatures from Plaintiff, indicating that she received treatment from Spine Rehab from September 18, 2017, to October 25, 2017. *Id.* at PageID.120.[4] The

---

[4] At trial, Spine Rehab initially sought payment for services from September 2017 to December 2017. However, the court narrowed the scope of Spine Rehab's ability to seek relief during trial when it held that the alleged assignment between Spine Rehab and Massengale for chiropractic services from October 30, 2017 to December 4, 2017, was invalid. ECF No. 24-3, PageID.942. This further demonstrates that Spine Rehab's ability to seek no-fault PIP benefits from State Farm on behalf of Massengale was strictly limited to the scope of the assignment between them.

language of the assignment is clearly limited, it demonstrates that Plaintiff was not assigning *all* of her rights to receive no-fault PIP benefits to Spine Rehab; rather, she was assigning her rights to receive no-fault PIP benefits for those "Services" she incurred with Spine Rehab from September to October 2017.

Michigan recognizes such partial assignment in the no-fault PIP benefit context. *Henry Ford Health System v. Everest Nat'l Ins. Co.*, 927 N.W.2d 717, 722-23 (Mich. App. 2018) (noting that holding an assignment unenforceable as a partial assignment "would effectively render the insured's right to assign a claim for past or presently due benefits meaningless"). Because MCL 500.3142 requires prompt payment of no-fault PIP benefits as they accrue, Michigan courts have permitted partial assignments to individual providers to ensure this prompt payment. *Id.* at 723; *North Shore Injury Center Inc. v. Home-Owners Ins. Co.*, No. 340357, 2019 WL 939031, at *3 (Mich. App. Feb. 26, 2019) ("Because each payment presents a new claim, the no-fault act necessarily permits multiple suits to enforce the payments."); *see also* MCL 500.3142 (stating that No-Fault PIP benefits "are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained). "Furthermore, MCL 500.3112 contemplates that an insurer may discharge its obligation to the insured with respect to *particular* benefits that have been incurred by directing payment of those benefits to the party providing services to the injured

17

party." *Henry Ford*, 927 N.W.2d at 723 (emphasis added) (citing *Covenant*, 895 N.W.2d at 500-01); MCL 500.3112 (stating that in the absence of written notice by another claiming entitlement to payment, "[p]ayment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to benefits, discharges the insurer's liability *to the extent of the payments . . . .*") (emphasis added)). It cannot be said that Plaintiff assigned *all* of her rights to no-fault PIP benefits in her assignment to Spine Rehab such that a "substantial identity of interests" existed between them because Spine Rehab could only collect Plaintiff's benefits for services it rendered to her. This lack of a "substantial identity of interests" also makes sense pragmatically. Because Spine Rehab sued to collect on a $7,500 bill for chiropractic services—and Massengale has since accumulated medical bills totaling over $300,000—it cannot be said that Spine Rehab shared a "substantial identity of interests" to prove at trial the full scope of all of Massengale's possible injuries arising from the accident. It was only obligated to demonstrate that Massengale sustained a particular injury to her body necessitating *Spine Rehab's* services in order to collect no-fault PIP benefits from State Farm. Indeed, Spine Rehab only proffered the testimony of the Spine Rehab chiropractor who treated Massengale and the State Farm claims representative who processed and denied Massengale's claim for benefits. *See* Spine Rehab trial transcript, ECF No. 24-3. It did not put forward any other evidence indicating that

Massengale was injured in the car accident. While State Farm may have fully litigated Plaintiff's medical history and proffered testimony from three independent medical experts who testified to their belief that Massengale was not injured *at all* by the accident, the proper inquiry is not whether State Farm—but rather whether Plaintiff, as a non-party— had a "full and fair opportunity to litigate" in the first action. *See Sturgell*, 553 U.S. at 892. In light of the limited scope of Plaintiff's assignment of rights to Spine Rehab to collect no-fault PIP benefits, the Court finds that Spine Rehab and Plaintiff did not share a sufficient "identity of interests" to conclude that privity existed for purposes of Plaintiff's claim for no-fault PIP benefits, UIM benefits and Medicare damages based on *all* of her medical bills and alleged injuries.

Because the Court finds that both actions did not involve "the same parties or their privies," the Court need not consider whether "the matter in the second case was, or could have been, resolved in the first." *Adair*, 680 N.W.2d at 396. Because not all of the elements have been met, the doctrine of res judicata does not bar Plaintiff's present claims against State Farm except to the extent that she seeks any benefits or damages related to services rendered by Spine Rehab.

## 2. Collateral estoppel (issue preclusion)

For the doctrine of collateral estoppel, or issue preclusion, to apply: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same

19

parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845-46 (Mich. 2004) (internal quotations omitted) (alteration in original). "[M]utuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action." *Id.* at 846 (quoting *Lichon v. American Universal Ins. Co.*, 459 N.W.2d 288, 297-98 (1990)).

Taking the second and third prongs first, Plaintiff asserts that the rule against nonparty preclusion also bars the application of collateral estoppel to her claims. ECF No. 17, PageID.412. The Court agrees. As detailed *supra*, Plaintiff assigned only a portion of her no-fault PIP benefits to Spine Rehab. *See* Assignment of Right, ECF No. 10-5. Although Spine Rehab was obligated to litigate the issues of injury and causation to collect no-fault PIP benefits on behalf of Plaintiff, that obligation did not extend beyond those injuries *Spine Rehab* treated and whether the motor vehicle accident caused *those* injuries. *See* ECF No. 24-3, PageID.757 (State Farm claim specialist Christie Pierce explaining that Spine Rehab only sought $7,500 in unpaid bills for chiropractic treatment to Massengale's "neck and back complaints").

Statements by the court in the Spine Rehab trial reinforce this view. For example, the court attempted to limit the parties' ability to mention Massengale's ongoing litigation in this Court to the jury, stating

"[w]e're dealing with a situation whether there was *an* injury to a claimant that was reasonably calculated to be from [an] automobile accident." ECF No. 24-3, PageID.762-63 ("I don't think you overstepped your bounds in opening statement, for them to know there's another claim concerning other damages isn't a problem, but were not going to try the issues in this court."). Additionally, counsel for State Farm inquired on cross-examination of the State Farm claim specialist who processed Massengale's claim for benefits, Christie Pierce, what benefits an individual can request through PIP that are unrelated to medical bills. Transcript, ECF No. 24-3, PageID.798-99. At this point, counsel for Spine Rehab objected on the basis of relevance, asserting: "[w]e're here for an allowable expense claim *limited to my client Spine Rehab*. What else may have been claimed or whatever else could have been claimed has no consequence whatsoever to the claim being brought in this case." *Id.* at PageID.799 (emphasis added). The court sustained the objection. *Id.* at PageID.800 ("[T]his isn't relevant to the issue before us. The issue before us is strictly in terms of the monies being requested for the chiropractic services and we're going to limit it to that.").

Regardless of whether State Farm attempted to prove that Plaintiff was not injured at all by the motor vehicle accident,—and did so, in part, by presenting a number of Massengale's medical records to the jury that were unrelated to her injuries treated by Spine Rehab—Plaintiff did not have a "full and fair opportunity" to prove that she was injured in the

21

accident; Spine Rehab was only obligated to prove that her spine and neck had been injured in a manner that necessitated the need for its chiropractic services. *See* ECF No. 24-3, PageID.757; *id.* at PageID.751 (State Farm moves to admit Massengale's medical records and Spine Rehab stipulates to their admission). The state court, in effect, recognized this when it limited State Farm's ability to question the Spine Rehab chiropractor about the full scope of Massengale's medical records. The court reasoned that the bulk of Massengale's medical records submitted by State Farm were not relevant to Spine Rehab's "treating the back and submitting bills for $7,500." *See* ECF No. 24-3, PageID.884-886; *Id.* at PageID.891 (Spine Rehab chiropractor explaining that he did not review any of Massengale's prior medical records before treating her for her injuries).

Therefore, it cannot be said that the issues of injury and causation related to other areas of Massengale's body—such as her right knee and right shoulder—were fully and fairly litigated by Spine Rehab. Similarly, "mutuality of estoppel" does not exist. While Defendant asserts that the Michigan Supreme Court "abandoned" the requirement of mutuality in *Monat*, the court there only determined that the lack of mutuality of estoppel should not preclude the use of collateral estoppel when it is asserted defensively by the same party in the prior matter and that party had a full and fair opportunity to litigate in the prior suit. *See Monat*, 677 N.W.2d at 850. While State Farm is asserting collateral estoppel

defensively, Plaintiff was not a party in the Spine Rehab litigation, and as discussed *supra*, full privity did not exist between Plaintiff and Spine Rehab for purposes of proving the issues of injury and causation.

Because the Court finds that Plaintiff did not have "a full and fair opportunity to litigate" the issue of whether she was injured in the motor vehicle accident, the Court concludes that the doctrine of collateral estoppel does not bar Plaintiff's claims except to the extent that she seeks any benefits or damages related to services rendered by Spine Rehab.

## IV. Conclusion

For the reasons stated above, Defendant's Motion for Leave to File Amended Affirmative Defenses is **GRANTED** and Defendant's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

DATED this 24th day of September, 2019.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge